# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-20105-STA-cgc |
| | ) | |
| KARLOS LOVE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant Karlos Love's Motion to Suppress (D.E. # 63) filed on May 11, 2012. This matter was referred to the United States Magistrate Judge for report and recommendation. Pursuant to the order of reference, the Magistrate Judge conducted a suppression hearing and received testimony on July 3, 2012. At the conclusion of the hearing, the Magistrate Judge read into the record her report recommending that the Motion to Suppress be denied. A transcript of the Magistrate Judge's oral report and recommendation has been filed (D.E. # 75), and the Magistrate Judge has issued a brief written order as well. On August 9, 2012, Defendant filed timely objections to the Magistrate Judge's report, and the government has not responded. For the reasons set forth below, the Magistrate Judge's Report and Recommendation is **ADOPTED**, as modified, and Defendant's Motion to Suppress is **DENIED**.

## BACKGROUND

The Magistrate Judge's report summarized the testimony of the witnesses at the suppression

hearing and then went on to propose specific findings of fact. Defendant has objected only in part to the Magistrate Judge's proposed findings of fact. The Court will address each of Defendant's objections to the report's proposed factual findings in due course. For the sake of completeness, the Court will actually modify the Magistrate Judge's proposed findings of fact to include more of the facts presented during the suppression hearing.[1] Having reviewed the testimony introduced at the suppression hearing, the parties' briefs, and the entire record in this case, the Court hereby adopts the Magistrate Judge's proposed findings of fact as modified.

The Magistrate Judge first received the testimony of Officer Trey Norris of the Memphis Police Department's ("MPD") Organized Crime Unit. On October 12 and 13, 2010, Officer Norris conducted surveillance of a residence at 949 Biggs, Memphis, Tennessee. MPD had received a complaint about drug sales at that location involving two men identified as Defendant Karlos Love and his co-Defendant Demond Eddings. The tip described the physical appearance of each man as well as the vehicles they were using. Officer Norris testified that during his surveillance he observed an unusual number of cars arrive at the residence where visitors would pull up, be met by Defendant Karlos Love, stay approximately four to five minutes, and then leave. Officer Norris stated that in his experience such activity was consistent with drug sales being conducted on the premises though he admitted that he did not actually see any narcotics transactions. At other times during the surveillance, Officer Norris saw Defendant leave in his own vehicle, a blue Chrysler PT Cruiser.

---

[1] 28 U.S.C. § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). The Magistrate Judge read her report into the record at the conclusion of the suppression hearing. The Court finds that other material facts included in the record were not part of the proposed findings of fact and that these material facts are important to the Court's *de novo* analysis of the issues presented. Therefore, there exists good cause to modify the report.

Officers followed Defendant to other locations and observed him engage in apparent drug transactions.[2]

On October 13, 2010, Officer Norris watched Defendant arrive at 949 Biggs in the blue Chrysler PT Cruiser. Defendant stayed inside the house no more than fifteen minutes and then left the house with a plastic bag resembling a potato chip bag. Defendant placed the bag in the back seat of his car and drove away. Officer Norris, who was conducting surveillance from three or four houses down the street, observed that Defendant had not put on his seatbelt before driving off.[3] Officer Norris proceeded to follow Defendant in an unmarked unit accompanied by his partner Officer Jerry Graves. According to Officer Norris, Defendant made several turns without using his traffic signal. Officer Norris testified that he remembered Defendant making three such turns but admitted that he was also driving and trying to maintain a safe lookout. As such, Officer Norris could not say whether Defendant had used his signal to make other turns, including some left turns. Officer Graves testified that he did not observe Defendant making the turns without signaling but did see that Defendant was not wearing his seat belt. Officer Norris called for a unit equipped with blue lights and a siren to initiate a traffic stop.

---

[2] Officer Norris did not specify where these other locations were or what observations led him to suspect that Defendant was conducting drug transactions there. Although Officer Norris did state on re-direct that he observed individuals step into Defendant's vehicle, he did not actually indicate where he saw this activity. The warrant affidavit states that these observations were made in North Memphis and the Frayser area. Warrant Aff. (D.E. # 66-1).

[3] Defendant adduced evidence that sunset occurred at 6:28 P.M. on October 13, 2010. The record of arrest indicates that the officers were conducting surveillance at approximately 7:00 P.M. Nevertheless, Officer Norris, Officer Brown, and Officer Graves all clearly testified that there was ample daylight to observe Defendant not wearing his seatbelt. Officer Norris suggested that he completed his report at 7:00 P.M., not that he observed Defendant not wearing his seatbelt at that time. The Magistrate Judge credited the officers' version of these events.

Officer Algeron Brown, an MPD officer working in the same unit with Officers Norris and Graves, received the call to make the traffic stop. Officer Brown received information on Defendant's location as well as details about the traffic violations. Officer Brown testified that he knew Defendant was the subject of a narcotics investigation. Officer Brown further testified that prior to the stop, he personally observed that Defendant was not wearing his seatbelt and that Defendant made one turn without a proper signal. Officer Brown at first followed Defendant from a distance with several vehicles between them but soon came along beside Defendant's vehicle.[4] According to Officer Brown, the windows on Defendant's vehicle were not tinted, and Defendant was driving with the driver's side window partially rolled down. Officer Brown specifically noted that Defendant was not wearing his seatbelt. At that point Officer Brown pulled Defendant over. As he approached the car, Officer Brown smelled raw marijuana and observed that the driver's side window was still down. When Officer Brown asked Defendant to step out of the vehicle, Officer Brown saw a clear plastic bag containing what appeared to be marijuana partially under the driver's seat. Officer Brown then conducted a patdown search for officer safety and discovered that Defendant had a gun on his person. Officer Brown arrested Defendant and secured him in the back of his squad car. Officer Brown took the additional precaution of calling for a canine unit to conduct a sweep of Defendant's vehicle. Upon arrival, the canine was deployed and alerted to the presence of narcotics.

Officer Norris testified that he and his partner watched the traffic stop at a distance. Once the officers saw that Defendant was in custody, Officer Norris and Officer Graves returned to 949

---

[4] In fact, Officer Brown stated that he came alongside Defendant's car inadvertently. Officer Brown testified on re-direct that when he did that, Officer Norris and Officer Graves radioed him to tell him he was actually driving beside Defendant's vehicle.

4

Biggs. Officer Norris testified that they saw Demond Eddings walk out of the house towards his Jeep Grand Cherokee. During his testimony Officer Graves stated that Eddings was already in his vehicle. In any event, both officers agreed that when Eddings observed their police clothing, he immediately attempted to swallow a large bag containing marijuana. The officers ordered Eddings to spit out the bag. Eddings complied and was placed under arrest.

Having taken Eddings into custody, the officers determined that a protective sweep of the residence was necessary to ensure that no one else was inside and that no other evidence could be destroyed. After the police entered the house, they did not find any other people but did observe several bags of marijuana in plain view. At that point Officer Graves left the scene to obtain a search warrant for the residence. Officer Graves testified that he prepared the warrant and later returned with the warrant, which the officers executed. In addition to the narcotics that they had previously found in plain view, the police discovered additional quantities of drugs.

Defendant testified at the suppression hearing on his own behalf. Defendant stated that on October 13, 2010, he had not been at 949 Biggs for most of the day. When he left around 7:00 P.M., it was growing dark outside. Defendant admitted that the plastic chip bag he was carrying contained marijuana. Defendant testified that he drove away in a blue PT Cruiser, which had factory-tinted windows. Defendant went on to describe in some detail his exact route between the Biggs residence and the point of the traffic stop at McLean and Stage Road. According to Defendant, he made a series of turns on the route, three right turns and three left turns. Notably, Defendant testified that he was wearing his seatbelt at all times and using proper turn signals because he "had a drugs in the car" and wished to avoid detection.

Based on the testimony presented at the suppression hearing, the Magistrate Judge proposed

the following findings of fact. The Magistrate Judge credited the officers' version of events leading up to Defendant's arrest. The officers' observed activities at 949 Biggs, which were consistent with drug trafficking. The Magistrate Judge pointed out that while the officers did not remember the exact route taken by Defendant after he left the Biggs residence on October 13, 2010, Defendant testified as to all of the turns he made prior to the traffic stop. According to Defendant, there were three right turns along his route, and Officer Norris testified that Defendant made three right turns without using a proper signal. The Magistrate Judge found this proof credible and consistent, noting that the police officers "were not conforming their testimony to Mr. Love's recollection."[5] The Magistrate Judge further credited the officers' unanimous testimony that Defendant was not wearing a seatbelt and rejected Defendant's claim to the contrary. Furthermore, Officer Brown was in an even better position to observe Defendant as he drove, and Officer Brown was unequivocal in stating that Defendant was not wearing a seatbelt.

In his objections to the Report and Recommendation, Defendant challenges several of the Magistrate Judge's proposed findings. First, Defendant objects to any factual finding that the activities observed during the police surveillance of 949 Biggs were consistent with drug transactions. Defendant emphasizes that Officer Norris never actually saw any drugs change hands. Second, Defendant objects to any factual finding that Defendant operated his vehicle without using his turn signal. Defendant states that the affidavit of complaint and the record of arrest assert that Defendant made right turns without using his signal; however, the evidence also showed that

---

[5] Suppression Hr'g Tr. 12:3-4, Report & Recommendation (D.E. # 75).

Defendant made left turns prior to the traffic stop as well.[6] Defendant contends that "it defies logic that your Defendant failed to use his right turn signal yet used his left turn signal."[7] Finally, Defendant objects to the finding that he was operating his vehicle without wearing a seatbelt. Defendant calls into question the officers' testimony on this point, citing evidence that the sun had already set by 7:00 P.M. on the date of his arrest. Defendant challenges Officer Norris's claim that it was "very bright" outside when Officer Norris observed Defendant drive away without engaging his seatbelt. Based on these objections, Defendant asks the Court to reject the Magistrate Judge's proposed findings on each point.

Having reviewed the testimony presented to the Magistrate Judge and the entire record of the case, this Court adopts the Magistrate Judge's findings of fact as modified in this Order. With respect to the first objection Defendant raises, the Court finds that Defendant has actually objected to a conclusion of law, not a factual finding. The Magistrate Judge simply credited Officer Norris's testimony about the types of activities he observed during his surveillance, including an unusual number of vehicles arriving at the Biggs property and staying for only a matter of minutes. Officer Norris further testified that Defendant would make contact with the drivers and engage in a brief exchange and then the drivers would leave. Based on his experience in investigating narcotics crimes, Officer Norris found that these activities were indicative of drug trafficking. Defendant does

---

[6] On this point Defendant claims that Officer Norris testified that Defendant's route included more than three right turns and cites two different parts of Officer Norris's testimony for support. Upon inspection of those portions of the transcript, the Court finds that Officer Norris only stated that Defendant had made a left turn onto Vollintine. Otherwise, that part of the record is silent about the number of right turns Defendant made. The Court finds Defendant's objection to be unsupported and without merit.

[7] Def.'s Objs. to Report & Recommendation 2.

not dispute that these activities occurred or that Officer Norris observed them. Defendant simply argues that Officer Norris did not see any contraband change hands. And yet, the kinds of activities Officer Norris observed go to the issue of whether under the totality of the circumstances, there was probable cause to believe that Defendant was dealing drugs or that evidence of illegal activity might be found at 949 Biggs. It is well-settled that a "pattern of activity" fairly indicative of drug trafficking will satisfy the totality of the circumstances test for probable cause.[8] It follows that while officers may not personally observe the contraband, observations of other, atypical activity may serve as the basis for probable cause. Properly viewed then, Defendant's objection is that the activities Officer Norris saw would not support a finding of probable cause, a conclusion of law the Court addresses in more depth below. Otherwise, Defendant has not contested the fact that Officer Norris actually observed the activities during his surveillance. Therefore, Defendant's objection to the proposed finding of fact is overruled.

Concerning Defendant's second objection to the finding that he did not use a proper turn signal, the Court finds this challenge to be without merit. Defendant testified that he made a series of turns and used a proper signal for each one, being careful to obey the traffic laws because he was carrying drugs. Both Officer Norris and Officer Brown testified that Defendant made turns without using a signal. This amounts to a simple factual dispute, which the Magistrate Judge resolved in favor of the police officers. Having presided over the evidentiary hearing, the Magistrate Judge "had the opportunity to view the witness on the stand and assess his demeanor"[9] and thus was "in the

---

[8] *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991).

[9] *Peveler v. United States,* 269 F.3d 693, 702 (6th Cir. 2001); *see also Moss v. Hofbauer,* 286 F.3d 851, 868 (6th Cir. 2002).

better position to assess the credibility of witnesses" she heard during the evidentiary hearing.[10] "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment."[11] Having reviewed *de novo* the entire record of the proceedings before the Magistrate Judge, the Court finds no reason not to adopt her proposed finding that Defendant did not use a proper turn signal.

Defendant offers only one basis for setting aside the Magistrate Judge's credibility finding. In his objections, Defendant argues (though it is not a well-developed argument) that it would be illogical to find that Defendant used a turn signal for some turns but not others. Defendant testified that he made three left turns and three right turns on the route he drove before the traffic stop. The police reports, however, mention only that Defendant failed to signal for three right turns. The Court finds no inconsistency in the officers' testimony on this issue that would call the Magistrate Judge's credibility finding into question. Officer Norris simply stated that Defendant made three right turns without using a proper signal but admitted that he did not recall whether Defendant made left-turns without using a signal. Officer Graves testified that he did not actually witness Defendant make any turns without signaling. Putting aside the testimony of Officers Norris and Graves, Officer Brown clearly testified that he saw Defendant make one turn without using a proper signal. The Court finds

---

[10] *United States v. Woodruff*, 830 F. Supp. 2d 390, 402 (W.D. Tenn. 2011) (Mays, J.) (quoting *United States v. Robinson,* No. 1:07–CR–1, 2007 WL 2138635, at *1(E.D. Tenn. July 23, 2007)).

[11] *United States v. Brown,* No. 1:07–CR–9, 2007 WL 1345463, at *1 (E.D. Tenn. May 7, 2007). *See also United States v. Tyler*, 2:10-CR-20124-STA, 2011 WL 2551177 (W.D. Tenn. June 27, 2011); *United States v. Tuggle,* No. 2:10–cr–20042–JPM–tmp, 2011 WL 692812, at *1 (W.D. Tenn. Feb. 18, 2011) (quoting *United States v. Freeman,* No. 08–5677, 2010 WL 4244268, at *9 (6th Cir. Oct. 19, 2010)).

that this record does not undermine the Magistrate Judge's credibility assessment. As such, Defendant's objection on this point is overruled.

Finally, Defendant has objected to the Magistrate Judge's proposed finding that Defendant was not wearing a seatbelt. Just as with the testimony about Defendant's lack of proper turn signals, there was a dispute about whether Defendant was wearing a seatbelt, and the Magistrate Judge credited the police officers' testimony over Defendant's. The record shows that the testimony of the police officers was unanimous: Defendant was not wearing a seatbelt. In that way the evidence about the seatbelt was even stronger than the evidence about the lack of turn signals. Both Officer Norris and Officer Graves testified that Defendant pulled away from 949 Biggs without fastening his seatbelt. Officer Brown testified that during his pursuit he pulled his cruiser alongside Defendant's vehicle and observed that Defendant was not wearing a seatbelt. Defendant maintained that he was wearing a seatbelt because he was carefully seeking to avoid a traffic stop. The Magistrate Judge rejected Defendant's account, found the officers to be credible, and concluded that Defendant was not wearing a seatbelt. Based on its *de novo* review of the record on this issue, the Court finds no reason to second-guess the Magistrate Judge's proposed finding. While there is some question about how much daylight there was at the time of the arrest, the testimony of the police was clear and consistent. All of the officers stated that they had enough light to observe Defendant not wearing his seatbelt. Under the circumstances, the Court overrules Defendant's objection on this point. Therefore, the Magistrate Judge's report of proposed factual findings is **ADOPTED** as modified in this Order.

### STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, the Court may refer a motion to suppress in a criminal matter

to a magistrate judge for the purpose of conducting an evidentiary hearing and to submit proposed findings of fact and recommendations for the disposition of the motion.[12] The Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made."[13] However, the Court is not required to conduct *de novo* evidentiary hearing as part of its *de novo* review.[14] After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge.[15] Moreover, the Court need not review, under a *de novo* or any other standard, those aspects of the report and recommendation to which no specific objection is made.[16] Rather, the Court may adopt the findings and rulings of the magistrate judge to which no specific objection is filed.[17]

## ANALYSIS

In his Motion to Suppress, Defendant seeks suppression of the firearm and all of the

---

[12] 28 U.S.C. § 636(b)(1)(B).

[13] § 636(b)(1)(C).

[14] *United States v. Raddatz*, 447 U.S. 667, 674 (1980) ("It should be clear that on these dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing. We find nothing in the legislative history of the statute to support the contention that the judge is required to rehear the contested testimony in order to carry out the statutory command to make the required 'determination.'"); *see also United States v. Saltzman*, 992 F.2d 1218 (6th Cir. 1993) ("[T]rial courts often determine credibility from depositions, so we do not find that it was required that the trial court in this instance needed to look at these witnesses in order to disregard the findings of credibility by the magistrate judge."); *United States v. Holland*, 980 F.2d 731 (6th Cir. 1992) (following *Raddatz* and holding that a district court need not hold a second evidentiary hearing).

[15] § 636(b)(1)(C).

[16] *Thomas v. Arn,* 474 U.S. 140, 150 (1985).

[17] *Id.* at 151.

marijuana recovered from his vehicle and from 949 Biggs. Defendant challenges the traffic stop, arguing that the police did not have probable cause to believe that a traffic violation had occurred. Defendant further argues that the police lacked any justification for entering 949 Biggs without a warrant and conducting a protective sweep.

The Magistrate Judge has proposed that the Court deny the Motion to Suppress. With respect to the traffic stop, the Magistrate Judge reasoned that the police had probable cause to pull Defendant over in light of Defendant's failure to wear a seatbelt and failure to use proper turn signals. The Magistrate Judge found that during the traffic stop, Officer Brown observed drugs in plain view and called for a canine sweep, which also confirmed the presence of narcotics. The Magistrate Judge held that the vehicle was searched incident to a lawful stop. Additionally, the Magistrate Judge held that Officer Brown was justified in conducting the patdown search for his own safety. Thus, the Magistrate Judge found that the traffic stop and search did not violate Defendant's constitutional rights.

As for the search of the residence at 949 Biggs, the government conceded that the initial entry into the home was improper. The Magistrate Judge nevertheless concluded that the police had probable cause to obtain the search warrant for the property even without the information they gained from the initial entry. The warrant affidavit described the following facts in support of the warrant: the complaint about drug-dealing at 949 Biggs, the police surveillance of suspicious activity there, the arrest of Defendant with narcotics in his vehicle, and the apprehension of Demond Eddings outside the Biggs residence as he was swallowing a bag of marijuana. The Magistrate Judge applied the independent source doctrine and concluded that based on these facts, probable cause existed to issue the warrant even without the information about what the officers observed during the improper,

12

initial sweep. Therefore, suppression of the evidence seized from 949 Biggs was not warranted.

Defendant has filed timely objections to the Magistrate Judge's recommended conclusions of law.[18] Defendant first argues that assuming the police did not actually see him operating his vehicle without wearing a seatbelt or observe him make any illegal turns, the police lacked probable cause to pull him over. Defendant next challenges the application of the independent source doctrine under the facts of this case. Specifically, Defendant contests the Magistrate Judge's conclusion "that the affidavit of the search warrant was sufficient to provide probable cause for the issuance of a search warrant. . . ."[19] The Court will consider each objection in turn.

**I. The Traffic Stop and Patdown Search**

Defendant first objects to the proposed conclusion of law that the traffic stop did not violate his constitutional rights. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."[20] The Sixth Circuit has held that

---

[18] Counsel for Defendant filed timely objections on Defendant's behalf on August 9, 2012 (D.E. # 86). On the same day, the Court received objections prepared *pro se* by Defendant himself (D.E. # 87). On August 16, 2012, the Court entered an order striking Defendant's *pro se* objections because Defendant continued to be represented by counsel (D.E. # 88). As a result, those objections are not addressed here.

[19] Def.'s Objs. to the Report & Recommend 3 (D.E. # 86). Defendant also states without elaboration that "because the traffic stop of your Defendant was not legal that all evidence discovered from that illegal traffic stop would not be admissible through the independent source doctrine." *Id.* The Court notes that the Magistrate Judge did not apply the independent source doctrine to the traffic stop, and none of the parties' briefing on the traffic stop addresses the independent source doctrine. As a result, the basis for Defendant's statement is not clear to the Court. For reasons explained more fully below, the Court adopts the Magistrate Judge's conclusions of law about the traffic stop and the search of the 949 Biggs residence.

[20] U.S. Const. amend. IV.

a routine traffic stop is a "seizure" for purposes of the Fourth Amendment.[21] "Any evidence seized during an illegal traffic stop must be suppressed as fruits of the poisonous tree."[22] However, a police officer may lawfully stop a vehicle when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime.[23] Put another way, "the fact that a traffic violation is not an arrestable offense does not divest the police of authority to stop the vehicle." [24] It is well-settled that a driver's failure to use a proper turn signal can establish probable cause to justify a traffic stop[25] as can the failure to wear a seatbelt.[26]

Applying these legal principles to the facts presented in this case, the Court holds that Officer Brown had probable cause to conduct the traffic stop of Defendant's vehicle. Officer Brown personally observed that Defendant was operating his vehicle without wearing a seatbelt and that

---

[21] *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012).

[22] *Id.* (quoting *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)).

[23] *Id.*; *United States v. Street,* 614 F.3d 228, 232 (6th Cir. 2010) ("[T]here is nothing unreasonable about stopping a vehicle whose driver has just committed a traffic violation."); *Gaddis ex rel. Gaddis v. Redford Twp.,* 364 F.3d 763, 771 n. 6 (6th Cir. 2004).

[24] *United States v. Anderson,* 458 F. App'x 440, 442 (6th Cir. 2012) (holding that a license-plate violation provided probable cause to make a traffic stop).

[25] *Whren v. United States*, 517 U.S. 806, 819 (1996) (holding that vehicle was properly stopped in part for failure to signal in violation of District of Columbia traffic code); *United States v. Miller*, 413 F. App'x 841, 843 (6th Cir. 2011) ("[E]ven if [the officer] used the failure to signal as a pretext to initiate a traffic stop of an otherwise-suspicious vehicle, this fact does not undermine the probable cause that existed to make the stop if [the defendant] failed to signal his turn."); *United States v. Westmoreland*, 224 F. App'x 470, 473-74 (6th Cir. 2007); *United States v. Akram,* 165 F.3d 452, 455 (6th Cir. 1999) ("[The officer] had probable cause to stop the truck because it failed to signal before changing lanes, in violation of Ohio law.").

[26] *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Street,* 614 F.3d at 232 (upholding the legality of a traffic stop made for a seatbelt violation); *United States v. Canipe*, 569 F.3d 597, 601 (6th Cir. 2009).

Defendant made at least one turn without using a proper turn signal. As such, Officer Brown had probable cause to believe that Defendant had committed a traffic violation. Additionally, to the extent that Defendant suggests that the traffic stop was pretextual, this fact, even if accepted as true, would not make the stop illegal. An officer's subjective intent is not relevant so long as the officer observed a traffic violation.[27] Therefore, the traffic stop in this case was lawful.

The Magistrate Judge further concluded that the patdown frisk conducted by Officer Brown was justified for officer safety, and Defendant has not raised a specific objection to this conclusion. "To justify a patdown of the driver or a passenger during a traffic stop, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous."[28] At the evidentiary hearing, Officer Brown stated that he knew Defendant was the subject of a narcotics investigation, that he smelled the strong odor of marijuana as he approached Defendant's car, that he observed a bag of what appeared to be marijuana in the floor of the vehicle, and that he conducted the patdown search for his own safety. The Sixth Circuit has held that reasonable suspicion to support a patdown or frisk for weapons exists under similar circumstances involving suspected drug trafficking.[29] Therefore, the Court holds that Officer Brown had a reasonable suspicion that

---

[27] *Whren*, 517 U.S. at 819; *see also United States v. Ware*, 465 F. App'x 487, 493 (6th Cir. 2012) ("[T]he district court determined that the detectives had probable cause to stop the car when Ware committed a traffic violation by turning right without using a turn signal. Because probable cause existed for the traffic stop, the district court correctly held that the officers' subjective or pretextual motivation for making the stop was not relevant under *Whren*.") (brackets omitted).

[28] *Ware*, 465 F. App'x at 493 (quoting *Arizona v. Johnson,* 555 U.S. 323, 327 (2009) (ellipsis omitted)).

[29] *United States v. Noble*, 364 F. App'x 961, 965 (6th Cir. 2010) (concluding that reasonable suspicion existed to support patdown where police smelled marijuana coming from vehicle and police experience showed that weapons and drugs are often carried together); *United*

Defendant may have been armed, thereby making his patdown search during the traffic stop objectively reasonable under the circumstances.[30]

Having concluded that the traffic stop and patdown search did not violate Defendant's constitutional rights, Defendant's Motion to Suppress evidence obtained as a result of the traffic stop and the patdown search is **DENIED** and the Magistrate Judge's Report and Recommendation is **ADOPTED** on these points.

II. Search of the 949 Biggs Residence

Defendant next objects to the Magistrate Judge's proposed conclusion of law that the search of the 949 Biggs property did not violate his constitutional rights and that narcotics evidence recovered as a result of the search of the Biggs residence should be admissible. As a preliminary matter, the United States concedes that the initial entry into the residence was improper. The

---

*States v. Jacob*, 377 F.3d 573, 579-80 (6th Cir. 2004) ("This Court has concluded that officers who stop a person who is reasonably suspected of carrying drugs are entitled to rely on their experience and training in concluding that weapons are frequently used in drug transactions, and to take reasonable measures to protect themselves.") (citing *United States v. Heath,* 259 F.3d 522, 530 (6th Cir. 2001) (internal quotation marks omitted); *United States v. Akinyemi*, 101 F. App'x 109, 111 (6th Cir. 2004) ("[T]his court has held that, where an officer suspects drug activity, he can reasonably infer that the suspect is armed and dangerous.").

In most of these cases, the officer conducting the frisk testified that his police training and field experience showed that suspected drug dealers often carried firearms. In the case at bar, Officer Brown did not offer such testimony directly. Even so, Officer Brown's testimony that he knew Defendant was a suspected drug dealer and that he conducted the frisk for his own safety arguably implied as much.

[30] Defendant has not raised any objection to the canine sweep Officer Brown requested during the traffic stop, although counsel did cross-examine Officer Brown about the need for the canine sweep. Having failed to address the issue in his Motion to Suppress or the objections to the Report and Recommendation, Defendant has not actually presented the issue to the Court for review. It is not clear then to the Court how the canine sweep could have violated his constitutional rights.

16

government argues instead that evidence seized during the second search of the premises need not be excluded due to the fact that the police had obtained a warrant. More to the point, the government contends that probable cause existed for the warrant to issue even without the information in the warrant affidavit about the narcotics the police observed in the house during the initial sweep. Defendant counters that stripped of the information gained from the tainted search, the warrant affidavit did not contain sufficient facts to establish probable cause. The Court disagrees and holds that probable cause to issue the warrant existed, even if the declarations about the presence of narcotics at the Biggs property were excised.

In protecting individuals from unreasonable searches, the Fourth Amendment requires that search warrants be founded upon probable cause.[31] Probable cause "exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place."[32] In making this determination, the magistrate must consider the totality of the circumstances.[33] In reviewing a magistrate's determination of probable cause, the issuing court's determination should be afforded "great deference."[34] If the affidavit lacks adequate facts to show that probable cause exists, the warrant may not issue.[35] A warrant issued upon such an affidavit may be invalidated and the evidence seized may be suppressed where it would result in appreciable deterrence of police

---

[31] U.S.C.A Const. Amend. IV.

[32] *United States v. Lyons*, 687 F.3d 754, 764 (6th Cir. 2012).

[33] *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012).

[34] *United States v. Lazar*, 604 F.3d 230, 241 (6th Cir. 2010).

[35] *Wheeler v. City of Lansing*, 660 F.3d 931, 938 (6th Cir. 2011) (citing *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996)).

misconduct.[36]

The Court holds that under the totality of the circumstances, a substantial basis existed for concluding that a search of 949 Biggs would uncover evidence of wrongdoing. First, the warrant affidavit stated that police had received a complaint about possible drug activity at that location, identifying the individual drug dealers as Defendant Karlos Love and his co-Defendant Demond Eddings.[37] Second, the affidavit further stated that MPD conducted surveillance of the Biggs residence and observed a high volume of traffic coming and going from the house, a pattern consistent with drug sales. Police observed Defendant and Eddings leave in their own vehicles at various times and travel to North Memphis and Frayser where they would meet up with other individuals for around five minutes at which point the other individuals would leave with a plastic grocery bag. Third, the affidavit stated that police saw Defendant leave the residence with a plastic chip bag and that they followed Defendant, watching him commit multiple traffic violations such as failure to wear a seatbelt and failure to use a proper turn signal. The affidavit described the traffic stop and the fact that the officer smelled the strong odor of marijuana coming from the vehicle, observed a clear plastic bag containing marijuana partially protruding from under the driver's seat, recovered a Colt .45 from Defendant's front waistband, and, following a positive canine alert, discovered approximately two pounds of marijuana located in Defendant's car. Fourth, the warrant affidavit stated that when officers returned to 949 Biggs, they approached Demond Eddings as he sat in his vehicle and then observed him attempt to swallow marijuana. Eddings was ordered to take the substance out of his mouth and taken into custody. Finally, the warrant affidavit states that

---

[36] *United States v. Leon*, 468 U.S. 897, 909 (1984).

[37] Warrant Aff. 1 (D.E. # 66-1).

officers entered 949 Biggs for the protective sweep and observed plastic bags containing what appeared to be marijuana in different rooms in the house.

The Court holds that the warrant affidavit established probable cause even without the tainted information obtained during the initial entry into 949 Biggs. As such, the Court concludes that the warrant was lawful, and the independent source doctrine applies. "The independent source rule holds that evidence will be admitted if the government shows that it was discovered through sources wholly independent of any constitutional violation."[38] The Court's inquiry is "whether, granting establishment of the primary illegality, the evidence has been come at by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint."[39] Here there were ample facts included in the warrant affidavit to establish probable cause. The officers acted on a complaint about possible drug transactions involving Defendant and his co-Defendant at 949 Biggs.[40] The police's independent investigation corroborated a pattern of suspicious traffic consistent with drug trafficking coming and going at 949 Biggs.[41] Ultimately, both Defendant and his co-Defendant were apprehended while possessing narcotics and just after leaving 949 Biggs. Under the totality of the circumstances, there was "a fair probability that evidence of a crime" would

---

[38] *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) (internal quotation marks and quotation omitted).

[39] *Id.* (brackets, internal quotation marks, and quotation omitted).

[40] *Gates*, 462 U.S. at 241 (1983) (holding that an informant's tip, anonymous or otherwise, may be corroborated by independent police work and that an independent investigation that sufficiently corroborates the tip may establish reliability); *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

[41] *Davidson*, 936 F.2d at 859 (holding that a "pattern of activity" fairly indicative of drug trafficking will satisfy the totality of the circumstances test for probable cause, even if police do not personally observe drugs going into or out of a residence).

be located at 949 Biggs, even without the officers' tainted observation of drugs inside the house. Thus, the Court holds that exclusion of that evidence "would put the police in a worse position, in that the [marijuana] was nonetheless discovered through sources wholly independent of any constitutional violation."[42]  For these reasons, Defendant's Motion to Suppress evidence collected from 949 Biggs is **DENIED** and the Magistrate Judge's Report and Recommendation is **ADOPTED** on this issue.

## CONCLUSION

The Magistrate Judge's proposed findings of fact, as modified, and conclusions of law are hereby **ADOPTED**.  Therefore, Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 6, 2012.

---

[42] *Jenkins*, 396 F.3d at 757 (internal quotation marks and quotation omitted).